UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JAMES HURT JR.,

                        Plaintiff,                              15-cv-7612 (PKC)

      -against-                                     OPINION
                                                                   AND ORDER

THE CITY OF NEW YORK, a municipal entity,
NYPD SERGEANT MICHAEL CONNIZZO
(Shield 1391, Tax ID 932485), and NEW YORK
CITY POLICE OFFICERS "JOHN DOES" 1-2,

                       Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff James Hurt Jr. brings claims pursuant to 42 U.S.C. § 1983 and New York law. He asserts that he was riding in a livery cab on July 2, 2014, when the vehicle was stopped by an unmarked car driven by officers of the New York City Police Department ("NYPD"). For the purposes of defendants' current summary judgment motion, it is undisputed that Hurt was frisked, his belongings were searched, and that he was subjected to excessive force, including a punch to the face and the dislocation of his left shoulder. Hurt then fled on foot, was struck by the unmarked car and spent the night hiding in an alley, before he called his father and received medical treatment. He was not arrested.

        The sole named individual defendant in this case is Michael Connizzo, a sergeant of the NYPD who works in the Bronx Anti-Crime Unit. Hurt asserts that Connizzo was one of the two officers involved in the July 2 incident. Connizzo moves for summary judgment in his favor, arguing that there is no evidence to show that he was on the job at the time, and that a

reasonable trier of fact therefore could not conclude that he was personally involved in the deprivation of Hurt's constitutional rights.

Hurt separately moves for partial summary judgment on several issues, including the unreasonableness of the force used against him, the City's liability on grounds of respondeat superior and defendants' affirmative defenses.

Connizzo and Hurt's motions turn on the credibility of witnesses, the reasonable inferences to be drawn and the weight to be accorded to certain evidence. Because these matters are reserved to the trier of fact, both motions will be denied.

The City of New York (the "City") also urges that there is no legal or factual support for Hurt's state law claims asserting negligent hiring, retention, training and supervision, and seeks summary judgment as to those claims. Because Hurt has not come forward with evidence or authority to support those claims against the City, the City's motion for partial summary judgment is granted. Hurt's equal protection claim brought pursuant to 42 U.S.C. § 1983 is voluntarily dismissed.

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law. . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).

It is the initial burden of the movant to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief, and the evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).

CONNIZZO'S SUMMARY JUDGMENT MOTION IS DENIED.

Connizzo argues that no reasonable trier of fact could conclude that he was present at the time of the July 2, 2014 incident. While Connizzo has come forward with evidence that, if credited, would permit a reasonable trier of fact to find in his favor, Hurt has come forward with evidence in opposition that is sufficient to defeat the motion.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). Personal involvement may be shown by evidence that a defendant participated directly in the alleged constitutional violation. Id. at 139 (citing Colon v. Coughlin, 48 F.3d 865, 873 (2d Cir. 1995)).

For the purposes of this motion, the following facts are undisputed.

Sometime after midnight on July 2, 2014, Hurt was a passenger in a livery cab that was driving through the Bronx, which he was taking from a barbecue to his girlfriend's apartment. (Def. 56.1 ¶¶ 1-2; Pl. 56.1 Resp. ¶¶ 1-2.) Near 174th Street and Boone Avenue, an unmarked police car pulled over the livery cab. (Def. 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3.) Two plainclothed officers stepped out. (Def. 56.1 ¶ 4; Pl. 56.1 Resp. ¶ 4.) As described by defendants' Local Rule 56.1 statement: "During the course of this stop, plaintiff was frisked, his duffel bag was searched, and he was subject to excessive force, including being punched in the face and having his left shoulder dislocated by one of the officers pulling back on his arm." (Def. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7.)

Hurt fled from the officers, who returned to their car and pursued him. (Def. 56.1 ¶ 8; Pl. 56.1 Resp. ¶ 8.) As described by defendants: "They struck [Hurt] with their car a short distance away, but did not follow him after he jumped over a nearby fence, ran down a grassy embankment, and jumped over a second fence." (Def. 56.1 ¶ 9; Pl. 56.1 Resp. ¶ 9.) Hurt hid in an alley overnight and borrowed a stranger's phone to call his parents. (Def. 56.1 ¶ 10; Pl. 56.1 Resp. ¶ 10.) He was taken to St. John's Riverside Hospital for medical treatment. (Def. 56.1 ¶ 11; Pl. 56.1 Resp. ¶ 11.)

At approximately 8:45 a.m. that morning, Hurt's father called the NYPD's internal affairs bureau to report the incident. (Def. 56.1 ¶ 12; Pl. 56.1 Resp. ¶ 12.) The case was forwarded to the Civilian Complaint Review Board ("CCRB") for investigation. (Def. 56.1 ¶ 13; Pl. 56.1 Resp. ¶ 13.) An investigator, Glenn Brown, obtained vehicle assignments for unmarked cars matching the approximate color of the vehicle reported by Hurt, and then reviewed the demographics of the officers assigned to those vehicles. (Def. 56.1 ¶¶ 14-15; Pl. 56.1 Resp. ¶¶ 14-15.) Brown identified Connizzo and Police Officer Frank Siciliano of the Bronx Anti-Crime

Unit as two plainclothed, white NYPD officers assigned to an unmarked car during the night of the incident. (Def. 56.1 ¶ 16; Pl. 56.1 Resp. ¶ 16.) The CCRB later closed its investigation on the grounds that the officers involved in the incident could not be identified. (Def. 56.1 ¶ 30; Pl. 56.1 ¶ 30; Docket # 71-15.)

Connizzo and Siciliano began that night's tour at approximately 7:30 p.m. (Def. 56.1 ¶ 17; Pl. 56.1 Resp. ¶ 17.) According to Connizzo, around that time, they both received a "court notification," which advised them that they were required to appear in Bronx Criminal Court at 9 a.m. on the following morning. (Def. 56.1 ¶¶ 17-18.) The NYPD has a policy that allows officers who receive a "court notification" to end their shifts and leave work at 12 a.m. (Def. 56.1 ¶ 19; Pl. 56.1 Resp. ¶ 19.) Siciliano left the precinct at approximately 12:05 a.m., and both Connizzo and Siciliano appeared in court the next morning at approximately 9:30 a.m. (Def. 56.1 ¶¶ 22-23; Pl. 56.1 Resp. ¶¶ 22-23.)

While the above-summarized evidence is undisputed, Connizzo cites to additional evidence that, he argues, shows that he could not have been working past midnight on July 2, 2014, and that he therefore could not have been personally involved in Hurt's claims. He notes that his personal "memo book" entry for July 1, 2014 indicates that he left the precinct at 12:05 a.m., based on the written notation "0005 EOT." (Def. 56.1 ¶ 22; Docket # 71-8.) He points to evidence that no license plate reader data was found for his personal or duty vehicle on July 1 and 2, 2014; that neither Connizzo or Siciliano had a "mobile digital terminal" on the date of the incident; that the vehicle assigned to Connizzo and Siciliano on the date of the incident was not equipped with GPS; and that phone records indicate that Connizzo did not make or receive any calls between approximately 12:20 a.m. and 9:30 a.m. the next morning. (Def. 56.1 ¶¶ 21, 24-27.)

In addition, while the defendants' Local Rule 56.1 statement does not cite to any statement under oath by Connizzo denying his participation in the July 2, 2014 incident, the summary judgment record includes an excerpt of his deposition, in which he testified that he left work at midnight: "Q. You left at midnight according to you on July 1st, right? A. Yes, I did." (Connizzo Dep. at 98-99.) If Connizzo's testimony is credited, a reasonable trier of fact could conclude that he left work at midnight, and therefore was not personally involved in the incident that resulted in Hurt's injuries.

In opposition to the motion, Hurt has come forward with evidence that, if credited, would permit a reasonable juror to find that Connizzo was personally involved in the July 2, 2014 incident. He also points to certain purported ambiguities in Connizzo's summary judgment record that turn on issues of weight and inference that must be decided by a trier of fact.

First, Hurt testified in his deposition that Connizzo participated in the incident of July 2, 2014. (Docket # 71-13.) When defense counsel asked whether there was "a reason why you believe that the officer's name is Connizzo?", Hurt answered, "That is the picture that I seen from my lawyers so he looked familiar to me, yes." (Docket # 71-13 at 2.) Hurt confirmed that he identified Connizzo from a photograph provided by his attorney. (Id. at 3.) Connizzo argues that Hurt's identification is not credible because it derived from an attorney-supplied photograph in which Connizzo wore sunglasses. (Def. Mem. at 7-8.) However, the credibility and reliability of Hurt's identification of Connizzo is appropriately weighed by a trier of fact rather than the Court at summary judgment.

Second, Hurt points to the absence of documents reflecting that Connizzo's shift ended early. A document described as "Roll Call" indicates that Connizzo's partner, Siciliano,

signed out at 12:05 a.m., with the notation "court" next to his signature. (Def. 56.1 Resp. ¶ 17-3.) But the "Roll Call" does not have a signature from Connizzo, and instead indicates an assigned tour of "19:30-04:27," [7:30 p.m. to 4:27 a.m.] which was then modified to a tour of "19:15-04:15" [7:15 p.m. to 4:15 a.m.]. (Def. 56.1 Resp. ¶ 17-3.) In his deposition, Connizzo stated that he did not sign out because he was "[l]azy, in a rush to get home," and he acknowledged that all other sergeants and lieutenants had signed out that night, as required. (Docket # 72-4.)

Third, Hurt notes the absence of documentation required for an officer who receives a so-called "court notification" on short notice. (Def. 56.1 Resp. ¶ 17-4.) This includes an absence of "appropriate notations" from a desk officer; records in the NYPD Appearance Control Unit as maintained in its Court Appearance Control System; a notification slip generated by the Bronx Anti-Crime Unit; and a copy of the notification with an acknowledgement signed by Connizzo. (Pl. 56.1 Resp. ¶ 17-4.)

Fourth, the absence of a "mobile digital terminal," license plate reader and vehicle GPS is not dispositive to whether Connizzo was on the job, and is properly weighed by a trier of fact. In his deposition, Connizzo testified that unmarked police cars frequently were not equipped with mobile digital terminals, and that he generally did not perform license plate checks when he pulled over a vehicle. (Docket # 72-4.) A trier of fact must weigh this evidence.

Therefore, while Connizzo has come forward with evidence that satisfies his burden as summary judgment movant, Hurt has also come forward with evidence that, if believed, would permit a trier of fact to find in his favor. The record also contains evidence that turn on issues of weight and inference that must be decided by a trier of fact. Connizzo's motion for summary judgment is therefore denied.

## DEFENDANTS' MOTION IS GRANTED AS TO HURT'S STATE LAW CLAIMS AGAINST THE CITY FOR NEGLIGENT HIRING, RETENTION, TRAINING AND SUPERVISION.

Counts Eight and Nine of the Complaint assert that the City failed to exercise reasonable care in the hiring, retention, training and supervision of any officer who injured Hurt, and assert claims of negligence under New York law. (Compl't ¶¶ 122-30.) To the extent that Hurt asserts that the City is liable for his state law tort claims on grounds of respondeat superior, the City has not moved for summary judgment in its favor.

As a broad proposition, New York law provides that an employer can be liable for the torts of an employee who acts within the scope of his or her employment under the theory of respondeat superior, but "'no claim may proceed against the employer for negligent hiring, retention, supervision or training.'" Eckardt v. City of White Plains, 87 A.D.3d 1049, 1051 (2d Dep't 2011) (quoting Talavera v. Arbit, 18 A.D.3d 738, 738 (2d Dep't 2005)). "While an exception exists to this general principle where the injured plaintiff is seeking punitive damages from the employer based on alleged gross negligence in the hiring or retention of the employee, that exception is inapposite here. The Court of Appeals has clearly held that the State and its political subdivisions . . . are not subject to punitive damages." Karoon v. New York City Transit Auth., 241 A.D.2d 323, 324 (1st Dep't 1997) (internal citations omitted). There are limited, fact-specific exceptions to Karoon, including when an off-duty police officer known by the City to have violent tendencies injures a person using a gun carried under the authority of the City. Gonzalez v. City of New York, 133 A.D.3d 65, 68-70 (1st Dep't 2015).

The City's summary judgment motion urges that under Karoon and related authority, Hurt's claims of negligent hiring, retention, supervision or training fail as a matter of law. (Def. Mem. at 9.) In opposition, Hurt offers no evidence or authority that support his negligence claims, including any facts that place Connizzo's purported conduct within the

reasoning of Gonzalez or any other exception to the general rule against bringing such claims against the City as an employer. (Opp. Mem. at 17-18.)

Because the City has established its entitlement to judgment as a matter of law on Count Eight and Count Nine, and Hurt has not come forward with evidence to defeat the motion, defendants' summary judgment is granted as to those claims.

HURT'S MOTION FOR PARTIAL SUMMARY JUDGMENT IS DENIED.

Hurt moves for partial summary judgment on six grounds. He asserts that 1.) through the contents of their Local Rule 56.1 statement, defendants have admitted all facts necessary to establish liability for excessive force, assault and battery under section 1983; 2.) the stop and search of Hurt was made without probable cause or reasonable suspicion, and was otherwise unlawful; 3.) the force used against Hurt was objectively unreasonable and excessive; 4.) all force used against Hurt was battery; 5.) that the City is liable as a matter of law for his claims of assault and battery under the theory of respondeat superior; and 6.) that defendants' affirmative defenses fail as a matter of law. (Def. Mem. at 12-21.)

Hurt's motion turns on fact-intensive arguments that are more properly considered by a trier of fact in light of the evidence at trial. It is up to the trier of fact to decide whether defendant Connizzo or any other NYPD officer was involved in the alleged incident. To succeed against the City on a state law respondeat superior ground, Hurt must prove that he was harmed by the tortious conduct of an employee of the City acting within the scope of his employment.

Hurt's motion for partial summary judgment is therefore denied.

HURT'S EQUAL PROTECTION CLAIM IS VOLUNTARILY DISMISSED.

Defendants argue that there is no evidence to support Count Four of the Complaint, which alleges under section 1983 the violation of Hurt's guarantee to equal

protection under the Fourteenth Amendment. (Def. Mem. at 8-9.) In response, Hurt states that he "respectfully withdraws his equal protection claim." (Opp. Mem. at 21.)

Count Four is therefore voluntarily dismissed.

CONCLUSION

Counts Four, Eight and Nine are DISMISSED. The parties' motions for summary judgment are otherwise DENIED. The Clerk is directed to terminate the motions. (Docket # 68, 77.) The claims remaining in this action are for false arrest, the use of excessive force and an unlawful stop and search against Connizzo pursuant to 42 U.S.C. § 1983, and battery, assault and negligence under New York law against Connizzo individually and against the City on grounds of respondeat superior.

There will be a pretrial conference in this case on September 6, 2018 at 2:30 p.m.

SO ORDERED.

_P. Kevin Castel_
United States District Judge

Dated: New York, New York
      August 22, 2018