J185hurC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JAMES HURT, JR.,

                    Plaintiff,                    New York, N.Y.

              v.                                  15 Civ. 7612 (PKC)

CITY OF NEW YORK, et al.,

                    Defendants.

------------------------------x

                                                  January 8, 2019
                                                  3:10 p.m.

Before:

                         HON. P. KEVIN CASTEL,

                                                  District Judge


                              APPEARANCES


STECKLOW COHEN & THOMPSON
        Attorneys for Plaintiff
BY:  WYLIE M. STECKLOW
            -and
LONDON INDUSI LLP
BY:  CARY LONDON

ZACHARY W. CARTER
        Corporation Counsel for the City of New York
BY:  QIANA SMITH-WILLIAMS
        ANGHARAD WILSON
        Assistant Corporation Counsel

J185hurC                          conference

```
 1              (Case called)
 2              THE DEPUTY CLERK:  For the plaintiff?
 3              MR. LONDON:  Cary London.  Good afternoon, Judge
 4    Castel.
 5              THE COURT:  Good afternoon.
 6              MR. STECKLOW:  Wylie Stecklow for the plaintiff.  Good
 7    afternoon, your Honor.
 8              THE COURT:  Good afternoon to you, Mr. Stecklow.
 9              And for the defendant?
10              MS. WILSON:  Angharad Wilson for the City of New York
11    and defendant Michael Connizzo.
12              MS. SMITH-WILLIAMS:  Qiana Smith-Williams, Corporation
13    Counsel, for defendants.  Good afternoon, your Honor.
14              THE COURT:  Good afternoon to you as well and Happy
15    New Year to all.  During this conference you all may remain
16    seated because I think we will give you better access to your
17    motion papers.
18              I have a joint pretrial order.  Is there any reason
19    why I should not enter the joint pretrial order, as drafted?
20              MR. STECKLOW:  I do think there is one addition that
21    we spoke with the City about.
22              MS. WILSON:  Yes, your Honor.
23              We would like to amend our exhibit that is currently
24    listed as Defendant's Exhibit B, as in boy --
25              THE COURT:  Thank you.
```

J185hurC                    conference

1            MS. WILSON:  -- to include a certification from the

2    NYPD certifying it as a business record of the NYPD.

3            THE COURT:  Any objection from the plaintiff?

4            MR. LONDON:  No objection, your Honor.  It's the

5    certification that comes with the --

6            THE COURT:  No, it's sufficient to say --

7            MR. LONDON:  Sorry.  No objection.

8            THE COURT:  No objection.  Thank you.  It is going to

9    be a long trial if I have to hear why are you not objecting to

10   something.

11           MR. LONDON:  I apologize.

12           THE COURT:  That's all right.

13           MR. LONDON:  And on that same wavelength, I wasn't

14   aware -- I don't think we turned over the T-Mobile

15   certification for Plaintiff's Exhibit no. 8.

16           THE COURT:  8.

17           MR. LONDON:  Plaintiff's Exhibit 8 is the T-Mobile

18   subpoena results.

19           THE COURT:  Any objection?

20           MS. WILSON:  I am just going to check the exhibits.  A

21   moment, your Honor?  (pause)  No objection, your Honor.

22           THE COURT:  So, I will make the change on Plaintiff's

23   Exhibit 8 and Defendant's Exhibit B indicating after the

24   description of the exhibit, "with business record

25   certification."

J185hurC                    conference

1          With that, no other changes to the joint pretrial

2     order?

3          MR. LONDON:  Not from plaintiffs.

4          MS. WILSON:  Nothing from defendants your Honor.

5          THE COURT:  All right.  So that's entered as an order

6     of the Court.

7          Let me turn to the *in limine* motions.  Plaintiff's

8     first *in limine* motion is the Rule 56.1 statement which

9     plaintiffs argue that the defendants should be precluded from

10    offering any evidence or testimony that are contrary to the

11    statements made in the rule 56.1 statement.  I have read the

12    parties' arguments.  Anybody have anything they want to add on

13    the subject?

14         MR. STECKLOW:  I do, your Honor, if I may be heard?

15         THE COURT:  Go ahead.

16         MR. STECKLOW:  Obviously the case law and everything

17    is in all of the papers we submitted.  We believe that the

18    statements were each supported by both admissible evidence and

19    that the distinction I think that the defense is trying to make

20    is that this is just inartful drafting and I would disagree.  I

21    would say if we look back at Mr. Hurt's deposition, that's

22    inartful questioning there.  When the City asked the deponent:

23    What was the officer doing while Connizzo was in your face --

24    therefore adopting that Connizzo was the participant -- that

25    would be, I consider, arguing inartful drafting.  But what they

J185hurC                          conference

1    put into the 56.1 statement was not that.  They put forth, I

2    believe, six different statements, one after the other, in the

3    56.1, that was supported by evidence.  It wasn't something that

4    they were adopting our facts just for arguments, it was

5    supported by evidence.  If it was a mistake on their part then

6    the way that our system of law works is that because a party

7    voluntarily chose an attorney to represent them in an action,

8    they cannot avoid the consequences of the acts or omissions of

9    this freely selected agent.  And that's in the *Hoodho* case that

10   was cited in our brief.  It would be wholly inconsistent with

11   our system of representative litigation in which each party is

12   deemed by the acts of his lawyer or agent and it is considered

13   to have notice of all facts, notice of which can be charged

14   upon the attorney.  Again, that's *Hoodho* quoting *Link v.*

15   *Wabash*, 370 U.S. 626.

16           THE COURT:  Mr. Stecklow, here is a very simple

17   question.  If the position you are urging is correct, I

18   shouldn't have ruled against you on the summary judgment motion

19   and I should have granted your motion to reconsider, correct?

20           MR. STECKLOW:  Yes, your Honor.

21           THE COURT:  I decided this in the motion to

22   reconsider.

23           MR. STECKLOW:  Okay, your Honor.  Obviously we made

24   our arguments.  We submitted this before the reconsideration

25   motion was decided.

J185hurC                    conference

1              THE COURT:  No.  The question I was asking you --

2    because it is going to be a very long afternoon otherwise -- is

3    whether there was anything you wished to add to your motion

4    papers, not: *I have it in my motion papers and now I would like*

5    *to make an oral repetition of it.*

6              MR. STECKLOW:  Your Honor, I think I added the facts

7    of what happened in the deposition and compared that to the

8    arguments the City was making.

9              THE COURT:  Thank you.

10             If you are right, then the motion to reconsider should

11   have been granted.  I wrote a four-page decision explaining my

12   ruling and, to repeat, to qualify as a judicial admission, a

13   party must make a clear, unambiguous, and unequivocal admission

14   of fact, acceptance of an adverse party's position for the sake

15   of advancing an argument which is otherwise contradicted by its

16   own submissions, is not an admission entitling the adverse

17   party, in that case the summary judgment, or here, for the

18   admissibility of the admission.  So, that's denied.  Plus,

19   which if it had any probative value, it is substantially

20   outweighed by the danger of jury confusion.  As I explain what

21   a summary judgment motion is, what a local civil rule 56.1

22   statement is, and its office and purpose.  So, that's excluded.

23             Now, let's talk about the CCRB report and, as I

24   understand it, the defendants themselves do not intend to offer

25   the CCRB report; is that correct?

J185hurC                    conference

1          MS. WILSON:  Yes.  That's correct, your Honor.

2          THE COURT:  And it's the plaintiff's position that

3     they intend to offer it but they want portions of the findings

4     removed.  Why does the CCRB report come in in certain respects,

5     but when it gets to the one portion that may be arguably of

6     help to the defendants, that should be excluded?

7          What is the rationale?

8          MR. STECKLOW:  Your Honor, our rationale is that we

9     are trying to give the jury an understanding as to why Connizzo

10    is here, why he was chosen, how did we find him.

11         The way we found him is because the plaintiff spoke to

12    the police and spoke to the CCRB within a short time after the

13    incident, gave a specific description of the vehicle and

14    Officer Connizzo and that, based on those descriptions, an

15    investigation was undertaken that identified all the vehicles

16    that matched this type of description that were in the Bronx in

17    the police that night.  Then they looked at who was in those

18    vehicles and they identified the people who generally matched

19    the description given by the plaintiff.  They then brought in

20    only two people, Connizzo and his partner.  We then found that

21    information out when we got the file.  We found Connizzo on

22    Facebook and our guy said that's him.

23         So, we do need to give the jury some explanation how

24    in the world of the NYPD we found that.  Our concern with the

25    findings is that the finding that it wasn't Connizzo and

J185hurC                         conference

1    Siciliano is simply based on the testimony of Connizzo and

2    Siciliano saying it wasn't us, we were out, we checked out

3    early that night.  No investigation done by the CCRB.  Those

4    statements, by Connizzo at least, will be here for the jury to

5    hear that testimony.

6         THE COURT:  You don't think that's highly misleading,

7    to leave with the jury the impression that the reason Connizzo

8    is a defendant in this case is because the CCRB, based on

9    information it received from Mr. Hurt, included him in their

10   investigation but they're not telling the jury what they found

11   with regard to Mr. Connizzo's participation?

12        MR. STECKLOW:  If they had done independent

13   investigation to determine that it wasn't him, I would

14   understand that that would be appropriate, but since their

15   investigation was simply to interview these individuals and

16   listen to them, their testimony and say it wasn't us and adopt

17   that, then that's the testimony that's going to come in.  It

18   would be, I believe, improper bolstering for the CCRB findings

19   to come in that are based solely on the testimony that the jury

20   is going to hear, your Honor.

21        THE COURT:  Well then, why is it improper bolstering

22   for the CCRB recitation of facts that come solely from what

23   Mr. Hurt said says to come in?

24        MR. STECKLOW:  Those facts will come in.  If you want,

25   we can delete those fact, we can redact those facts.  We are

J185hurC                    conference

1   happy to do more redactions.  It is the idea that we need to

2   give the jury some idea as to why we believe it is Connizzo,

3   how we found him, and this is the only documentary evidence as

4   to that process.

5           THE COURT:  Let me hear from the defendants.

6           MS. WILSON:  Well, your Honor, we would agree that it

7   is highly prejudicial to have any mention of the fact that

8   there was a CCRB investigation at all and, additionally, it

9   would be even more prejudicial for there to be mention of a

10  CCRB investigation without the conclusion of the CCRB that the

11  results were that Connizzo and Siciliano were not involved.

12          Furthermore, I would just like to say that the CCRB

13  did not come to the conclusion that Connizzo and Siciliano were

14  not involved with the incident merely by interviewing them.

15  They did interview them but they did also check their memo book

16  entries which were made contemporaneously with the events which

17  were months prior to when they were interviewed by CCRB, and

18  their memo book entries reflect that they left early that

19  evening.  Nevertheless, defendants would argue that the jury

20  doesn't need to be provided with the context of how Connizzo

21  was identified.  The fact of the matter is that plaintiff has,

22  at this point, identified Connizzo as one of the involved

23  officers and there is no -- and I think that that is the only

24  officer who has been identified.  I don't think that there is

25  any reason why a jury cannot just accept that he was identified

J185hurC                       conference

1   through some process that doesn't need to be gone into and I

2   think that there is a good potential for jury confusion as to

3   what the actual issues are if there is a large amount of

4   evidence introduced about the fact that there was an

5   investigation and how the investigation was conducted and was

6   the investigation conducted thoroughly enough.  Mr. Stecklow

7   low's brief recitation of how the investigation was conducted,

8   in fact, I think leads to many questions that may confuse a

9   jury and so it is defendant's position that it should be

10  excluded in its entirety.

11             MR. LONDON:  It can I just add one thing, your Honor?

12             THE COURT:  You may.

13             MR. LONDON:  Thank you, your Honor.

14        What Mr. Stecklow was trying to explain is that --

15             THE COURT:  Mr. Stecklow is very, very clear so if you

16  have a different point you want to make, make it, but I

17  understand Mr. Stecklow, as I usually do.

18        Go ahead.

19             MR. LONDON:  CCRB interviews the officers and the

20  officers are made to bring their memo books to CCRB so CCRB can

21  make copies.  Every police officer knows that.  And memo books

22  are kept with the police officer 24 hours a day.

23        So, the police officers bring in their memo books,

24  they know they're being interviewed for an incident.  If

25  Officer Connizzo wants to cover up where he was he can easily

1   say I checked out at 12:00 -- which is what he wrote in his

2   memo book.  If the CCRB did any investigation at all, the first

3   thing they would have said is let's look at the roll call,

4   let's see when he signed in and signed out.  Did CCRB do that?

5   No.  And when we subpoenaed the roll call years after the

6   incident we found the fact that Connizzo never signed out when

7   he said he did.

8           So, CCRB did no investigation except for the one fact

9   of interviewing him Connizzo says it wasn't me, here is my memo

10  book that I have on me at all times, I signed out at 12:00.

11  When the roll call, which is locked inside an office which CCRB

12  could easily have gotten, they didn't even look at.  So, for

13  the jury to hear that CCRB's findings were that it is

14  unsubstantiated against them because they told us they weren't

15  there and the memo book checks out is just self-serving.  The

16  first investigation CCRB would have done is let's look at the

17  roll call and they didn't even do that and that's why I think

18  the statements are self-serving as Mr. Stecklow explained.

19          THE COURT:  Under Rule 8038(C)(i), a report is not

20  excluded by the hearsay rule if it sets forth factual findings

21  resulting from an investigation made pursuant to authority

22  granted by law, unless the sources of information or other

23  circumstances indicate lack of trustworthiness.  A party

24  opposing the admission of evidence has the burden of showing

25  untrustworthiness.  Before the Court can presume

J185hurC                         conference

1    trustworthiness, it must determine that the report contains

2    factual findings based on a factual investigation.  It is the

3    methodology of factual investigation which provides a threshold

4    safeguard against untrustworthiness.  This is found in the

5    *Ariza* case, 139 F.3d 132 at 134.

6            I have reviewed the CCRB report and it is apparent to

7    me that, contrary to the assertions made, the findings and

8    recommendations set forth on pages 4 and 5 are supported by an

9    investigation.  The documents reviewed include documents from

10   the 41st Precinct, the 43 Precinct, an MISD check and New York

11   State trooper check, the 42nd Precinct documents.  They looked

12   at the stop, question, and frisk log, they looked at the fleet

13   services request, the daily vehicle assignment sheet, the roll

14   call for two or three -- the roll call for two or one on July

15   2nd or two or three on July 1, and similar documents reviewed

16   in the 43rd Precinct, as well as documents in PSA-7 and 8, the

17   patrol borough Bronx anti-crime unit, the narcotics bureau

18   Bronx unit, Bronx gang, and they investigated that.

19           Now, that only goes to whether there was an

20   investigation which has indicia of trustworthiness.  That's not

21   to say that the investigation and its outcome is binding in any

22   way and, in fact, the Court plans to give a cautionary

23   instruction and invites the parties to submit proposed

24   instruction before receiving the CCRB investigation into

25   evidence.  It's not binding, it is simply a piece of admissible

1    evidence and I will allow it into evidence at trial.  I do not

2    conclude at this stage that the probative value of either the

3    report or any portion of the report is substantially outweighed

4    by any of the factors mentioned in Rule 403.

5              Electronic sign-in sheet --

6              MS. SMITH-WILLIAMS:  Sorry, your Honor.  Can I have

7    clarification of your Honor's last ruling?

8              THE COURT:  Yes.

9              MS. SMITH-WILLIAMS:  So, is the ruling that the

10   finding as well as plaintiff's, what he intends to introduce

11   about how --

12             THE COURT:  The entire document can come in.

13             MS. SMITH-WILLIAMS:  Thank you, your Honor.

14             THE COURT:  And under the adoption of completeness, if

15   any portion is offered it all should come in at the same time?

16             MR. STECKLOW:  Your Honor, would that apply to any

17   part of the CCRB documents or just the five-page

18   recommendation?

19             THE COURT:  No.  Just the recommendation, period.  The

20   documents themselves don't come in.  They may come in under

21   some other theory independently but the full document wouldn't

22   come in.

23             MR. STECKLOW:  So, for clarity purposes, I believe

24   that's on the docket currently at 115-3 unredacted.

25             THE COURT:  115-3.  That's what I reviewed, 115-3.

J185hurC                        conference

1    And I know you have your redacted version --

2              MR. STECKLOW:  It was 115-4.

3              THE COURT:  Yes, I see it.  Yes.

4              Okay, electronic sign-in sheet --

5              MR. STECKLOW:  Judge, we can help you with this one.

6    We are withdrawing our objection.

7              THE COURT:  Okay.  So that's in.

8              Awards and commendations.  Defendants assert that they

9    do not intend to introduce any such evidence, so that's

10   disposed of.

11             Qualified immunity.  There is no reason why the words

12   "qualified immunity" should come out of anybody's mouth in

13   front of a jury, period, and I don't understand the defendants

14   to urge otherwise.  Am I correct?

15             MS. WILSON:  That is correct, your Honor.

16             THE COURT:  It is the defendant's burden to prepare

17   questions that you believe are relevant to the issue of

18   qualified immunity.  I will look at them and hear from

19   plaintiff's counsel, but even if I ask the question to the

20   jury, it doesn't mean that a particular answer to the question

21   will amount to qualified immunity or won't amount to qualified

22   immunity.  That's going to be a matter for subsequent briefing.

23   But, as I have come to learn, that is the practice recommended

24   by the Court and followed by this Court in the *Bah* case and in

25   other cases.  *Bah* is an example of where the questions

1    advocated by the City were asked, in some instances they got

2    the answers they wanted but the Court concluded that they did

3    not warrant qualified immunity.

4            So, that's an issue for down the road except for the

5    framing of questions to the jury.

6            MR. STECKLOW:  Your Honor, I respectfully disagree

7    with a little bit of the rulings.  I just wanted to state that.

8    I think there is a distinction between this case and the *Bah*

9    case.  I believe the *Bah* case is a shooting case, that there

10   was no question of the shooter, of the police officer that shot

11   the individual.

12           THE COURT:  Right.

13           MR. STECKLOW:  And that in this situation the

14   defendant officer is saying it's not me.  And what we are

15   asking the Court to rule -- and obviously I understand we are

16   not going to get this ruling -- is that you can't in one part

17   of your mouth say it's not me, I didn't do it, and in another

18   part say but if it was me, I didn't mean to do it which would

19   be the QI type of argument.

20           THE COURT:  Well, qualified immunity applies to state

21   law claims; is that right?

22           MR. STECKLOW:  I don't believe so, your Honor.  It

23   only applies to federal claims.

24           MS. SMITH-WILLIAMS:  There is qualified immunity in

25   both context, your Honor, so both in the federal context and

J185hurC                          conference

1   governmental immunity which is basically the equivalent of

2   qualified immunity in the state law context.

3         THE COURT:  Mr. Stecklow, you are free to brief this.

4   I don't want to hold you to your answer right here and now or

5   bind anybody by their answer here but I think that's the case,

6   that it applies as well to the state law claims.  And, of

7   course, one of your state law claims is that some officer, not

8   necessarily an identified officer, engaged in unlawful or

9   tortious conduct for which the City is liable on the theory of

10  respondeat superior.  In that context I would think the City

11  could urge the issue of qualified immunity.  If one of their

12  officers acted in that context, then reasonable officers could

13  disagree.

14        MR. STECKLOW:  I will do that research, your Honor.

15        THE COURT:  The other thing is whether I am even going

16  to give the questions is up for grabs.  I have to hear the case

17  and you will have an opportunity to argue it.

18        MR. STECKLOW:  From what you just explained, your

19  Honor, it sounds like you don't believe qualified immunity

20  would go in on the federal claim because he is denying he did

21  it but it could go in on the said claim because --

22        THE COURT:  I didn't decide that yet.

23        MR. STECKLOW:  That's what I'm asking.

24        THE COURT:  Well, I didn't decide that yet.  I gave

25  you an example of where the questions would apply.  That was

J185hurC                        conference

1    not an indication of a ruling that it doesn't apply in the 1983

2    context.

3              MR. STECKLOW:  Okay.

4              THE COURT:  I will try and watch my words more

5    carefully for you.

6              MR. STECKLOW:  No, no.  I don't mean disrespect

7    obviously.  That's why I asked the question.

8              THE COURT:  I don't think it was disrespect but I

9    guess I have to be very careful with my language.

10             I was simply giving you an example of where the

11   questions, that would be put to a jury on qualified immunity

12   might be appropriate and, as I previously said, an answer to

13   the question means nothing until there is briefing on it and

14   whether it does or it doesn't constitute a defense to the 1983

15   claim would be a matter decided after trial.  I wouldn't ask

16   the jury, for example, only with respect to the assault and

17   battery claim and not with respect to the 1983 claim, did this

18   happen.  The question that's asked may relate to the conduct of

19   the plaintiff and not even the conduct of a defendant.  That

20   sometimes happens in qualified immunity cases.

21             So, I don't think it's -- I'm glad you raised that

22   because I would hate to think that two months from now a

23   snippet of language that came out of my mouth is going to be

24   cited as a ruling that qualified immunity does not apply to the

25   1983 claim when I never said any such thing.

1            So, I actually thank you for that and if there is

2      anything you have a doubt about or the City, I would appreciate

3      your raising this --

4            MR. STECKLOW:  Your Honor, just --

5            THE COURT:  -- now so I don't get it two months from

6      now as to some statement out of context.

7            MR. STECKLOW:  Understood, your Honor, and I do not

8      intend or plan to take your Honor's words out of context.

9            THE COURT:  I understand.

10           MR. STECKLOW:  But point five does not seek any ruling

11     on state claim, solely about Connizzo and federal claims.  I am

12     sure the Court knew that when they read it at the time, it is

13     not what we are discussing right now.  I just wanted to point

14     it out.

15           THE COURT:  But now I'm going to respond to that and

16     I'm going to go back and say what I said.  With regard to

17     questions that are asked on qualified immunity, they are not

18     questions relating to a claim.  Now how, as a matter of

19     evidence or argument before the jury, is 5 a matter to be

20     decided?  Can you tell me that, Mr. Stecklow.

21           MR. STECKLOW:  No, your Honor.  I believe you already

22     stated it accurately.  I don't think that I -- what our

23     application was was for the Court to rule now, based on the

24     position Connizzo is taking, that QI I wouldn't apply not now,

25     not after the jury comes back, not after the evidence in.

1          THE COURT:  How is that an *in limine* motion?  That

2     sounds to me like a summary judgment motion.

3          MR. STECKLOW:  I understand the Court's position.  I

4     don't think I have an answer that I would like to proffer right

5     now for it.

6          THE COURT:  Because that's what I think I'm here doing

7     right now, is ruling on what argument can be presented to the

8     jury or can't be presented to the jury, what questioning can be

9     engaged in or can't be engaged in, what comments can be made at

10    trial in front of the jury, and what evidence can be admitted

11    and can't be admitted, not on what claims can go to the jury

12    and not on what defenses that are adjudicated after a trial can

13    be urged.

14         MR. STECKLOW:  Understood, your Honor.  Thank you.

15         THE COURT:  Now, with regard to defendant's first *in*

16    *limine* regarding the City's role, am I correct that the

17    plaintiffs have no intention of mentioning or eliciting

18    evidence or making any reference to indemnification of anyone

19    by the City?  Am I correct about that?

20         MR. STECKLOW:  Obviously, your Honor, if we get to

21    punitive damages there is going to be questions about indemnity

22    so that the jury would understand that if they're going to give

23    punitive damages it is not going to come out of Officer

24    Connizzo's pocket.  Outside of that specific situation, I don't

25    believe there is any reason for indemnification to be

1    mentioned.

2             THE COURT:  Well, is that correct?

3             MR. STECKLOW:  Is it correct that it should be

4    mentioned at that point?

5             THE COURT:  No.  Is it correct that if a jury finds

6    conduct that warrants punitive damages it doesn't come out of

7    the officer's pocket.

8             MR. STECKLOW:  Yes, your Honor; that is correct.

9             THE COURT:  Where does that come from?  Do you have

10   some support for that?

11            MR. STECKLOW:  I believe you have it, your Honor, and

12   I saw it in a transcript I read from -- I read it in the case

13   of *Feeley v. City of New York*.  It wasn't in that case where it

14   occurred but it was in that case that the argument was made and

15   the evidence was brought to your attention about it.

16            THE COURT:  What was the evidence?  Refresh my

17   recollection.

18            MR. STECKLOW:  There is evidence that I believe it was

19   Mr. Rothman's case and Mr. Rothman showed you evidence from a,

20   I believe, Judge Scheindlin case where that was allowed -- not

21   that it was allowed, he put stuff, documents on the docket that

22   showed the City always indemnities for punitive damages, always

23   indemnities for all of these claims and that, based on that, I

24   believe you said in that case that you would bifurcate punitive

25   damages if it came to it.

J185hurC                          conference

1              THE COURT:  Well, do you have that evidence?  Because

2     that's news to me.  I am not even sure that's lawful.  Is it

3     lawful to indemnify someone for punitive damages?

4              MR. STECKLOW:  I would imagine if the City is doing it

5     it would be lawful.

6              THE COURT:  I don't know.  I'm not sure.  Where do I

7     find this?  What's the docket number of the Judge Scheindlin

8     case?

9              MR. STECKLOW:  What I have is the index number for the

10    *Feeley* case and I believe --

11             THE COURT:  I know the *Feeley* case well.

12             MR. STECKLOW:  Right.  I believe it was in that case

13    that Mr. Rothman put the documents in front of you.

14             THE COURT:  From Judge Scheindlin's case.

15             MR. STECKLOW:  I believe it was Judge Scheindlin's

16    case.

17             THE COURT:  So, I was going to go right to Judge

18    Scheindlin's case and look at the statement by the City -- and

19    it is a statement by the City?

20             MR. STECKLOW:  Yes.

21             THE COURT:  That they always indemnify for punitive

22    damages?

23             MR. STECKLOW:  I believe it was various documents he

24    received and I'm not sure if it was from FOIL or otherwise.

25             THE COURT:  Let me ask the City.  Does the City always

1   indemnify people for punitive damages?

2           MS. SMITH-WILLIAMS:  Your Honor, there is no decision

3   made for indemnification until there is a finding of liability

4   in the first instance.  So, to suggest to the jury that the

5   City would automatically indemnify Sergeant Connizzo or any

6   other officer that allegedly participated, is just simply

7   incorrect.

8           MR. STECKLOW:  Judge, the case I'm finding in the

9   transcript of your conference with Mr. Rothman was *Gyasi*, and

10  that he says he -- what I put in there as an exhibit is a

11  transcript from a hearing Gyasi before Judge Scheindlin.

12          THE COURT:  Do you have the document number of Gyasi

13  case?  What I am trying to figure out is is this something the

14  City did in times long ago and maybe got caught doing it and

15  stopped it, or someone else became mayor and put an end to it,

16  or someone else became Corp Counsel and put an end to it.

17          So, let me find out from them.  Are you planning on

18  referring to indemnification of officers by the City.  That's

19  the question?

20          MR. STECKLOW:  We don't plan on doing that, your

21  Honor.  I was raising it solely in the punitive damage claim.

22  If it in fact comes up, I would think at that point it would be

23  appropriate to let the jury know that -- and it is only if I

24  can now correlate and put together, collate these documents and

25  put it in front of you.

1          THE COURT:  All right.  You may not make any reference

2    to indemnification of anyone by the City absent further order

3    of this Court.

4          MR. STECKLOW:  Understood, your Honor.

5          THE COURT:  And you may refer to counsel for the

6    defendants as counsel for the defendants and not by the

7    reference to the City's attorneys.  All right?

8          MR. STECKLOW:  Yes, your Honor.

9          THE COURT:  Now, with regard to the defendant's

10   argument that the City should be removed from the caption, it's

11   not, quite frankly, an *in limine* issue but it does go to

12   perhaps the jury instructions and this does not appear to be

13   the kind of a case where one might say if the plaintiff

14   prevails under 1983 action then necessarily the plaintiff has

15   prevailed on the state law claim and therefore if the City

16   agrees that it will be libel on a respondeat superior claim

17   basis for any finding against the officer, then the plaintiff

18   may wish to take that stipulation along with an agreement to

19   delete the City from the caption.  But that's not this case.

20         This is a case where one of the theories advanced by

21   the plaintiff is that officers not identified -- alternatively

22   officers not identified assaulted the plaintiff for which the

23   City is responsible under respondeat superior.  So, that claim

24   makes no sense unless the jury understands that it's a

25   respondeat superior claim against the City.  So, that's denied.

1        With regard to the notice of claim requirement, is

2   there anything the City wishes to add to its papers or the

3   defendant wishes to add to its papers?

4        MS. WILSON:  We have nothing to add, your Honor.

5        THE COURT:  Anything the plaintiff wishes to add?

6        MR. STECKLOW:  I'm sorry, Judge.  Are we on point 2

7   now?

8        THE COURT:  This is the notice of claim argument with

9   regard to Section 50E.

10       MR. STECKLOW:  Your Honor, we believe that the

11  standard that exists for these notice of claims have been

12  satisfied here.  The purpose is to give municipalities adequate

13  notice in a timely manner to investigate and, when appropriate,

14  settle in pretrial.  That is what they have had here.  This is

15  a case that's been, saw an IAB investigation and the CCRB

16  investigation.  It is one where the City has vehemently

17  defended the case and litigated it.  So, the purpose and the

18  intent of the notice of claim statute has clearly been

19  satisfied and I believe that because of that we should not be

20  precluded from seeking to have Connizzo held responsible via

21  the notice of claim.

22       THE COURT:  I reviewed the notice of claim which is an

23  exhibit to the Wilson declaration and I have reviewed it in the

24  context of the requirements.  The requirement is that any case

25  found upon a tort against the City or its employee, a plaintiff

J185hurC                          conference

1    must file a notice of claim within 90 days of the incident.

2    The purpose here is to give the municipality an adequate

3    opportunity to investigate the claim and to settle claims

4    without expense and litigation risks and not every claim need

5    be set forth, *in haec verba*, as long as the details pertaining

6    to such a claim are described sufficiently with respect to

7    time, place and manner, to enable the City to investigate the

8    claims.

9              Here, Exhibit A to the Wilson declaration, gives the

10   date, approximate time of the incident, and states that as yet

11   unidentified NYPD officers seized and battered, hurt without

12   cause.  It alleged injury to hurt's hand, shoulder, arms, torso

13   and legs and stated that the injuries were caused by

14   intentional reckless and negligent acts of the City, its agents

15   and employees, though did not identify Connizzo by name.  The

16   notice of claim provided sufficient detail for the defendants

17   to investigate the bases of Hurt's claims.

18             So, I conclude that the argument is without merit and,

19   further, I note this is not properly raised as an *in limine*

20   motion, this is a summary judgment argument and on that basis

21   alone I deny the application.

22             With regard to disciplinary histories, let me hear

23   from the plaintiff:  What do you have on a disciplinary history

24   of any officer that you seek to offer in this trial?

25             MR. STECKLOW:  We don't seek to offer any, your Honor.

1          THE COURT:  Thank you.

2          Now, there are arguments raised as to, let me in the

3    first instance take plaintiff's mother and father, and it seems

4    to me that I have to hear the testimony before I know what is

5    admissible and what is not admissible.  I will require the

6    plaintiff to identify any claimed excited utterance statements

7    or statements by the plaintiff which you seek to introduce

8    through the mother or the father.

9          Are there any?

10         MR. STECKLOW:  Yes, your Honor.

11         I believe we are going to have at trial both parents

12   explaining what happened when they got to the scene and picked

13   their son up and took him to the hospital and how he recounted

14   the story to each of them, I believe separately, in those

15   moments.

16         THE COURT:  Well, it seems to me that the testimony of

17   the parents is appropriate as to what they saw, what they

18   observed, whether they saw any swelling or whether they saw any

19   bleeding or whether, as parents, they thought their son was

20   unusually distressed going to the garden variety emotional

21   damages.  I think that is fair grounds for testimony but on

22   what basis would an out-of-court statement by Mr. Hurt to his

23   parents be admissible?

24         MR. STECKLOW:  Your Honor, I believe it comes in under

25   the excited utterance exception.

1          THE COURT:  That's what I asked you in the first

2     instance, is do you have any statements that you seek to offer

3     under the excited utterance.

4          MR. STECKLOW:  And I think that's why I said to you

5     that those are the ones that he told his parents when they

6     picked him up.

7          THE COURT:  So, what is the statement?

8          MR. STECKLOW:  We don't have specific words to recount

9     to you here.  The defense did not depose these individuals

10    although you gave them extra time, extended discovery to do so.

11         THE COURT:  I'm asking you -- this is the final

12    pretrial conference -- what other statements that you seek to

13    admit under the excited utterance exception to the hearsay

14    rule.

15         MR. LONDON:  I have spoken to both the mother and

16    father, Judge.  I don't have word-for-word, but the sum and

17    substance of the statements are the mother arrives first, the

18    son hugs the mother and he says, *Oh my God.  Thank God you are*

19    *there.  I thought I was going to die.*  And*, I'm fine, I'm fine.*

20    *Thank God I'm fine.*

21         Then, the father pulls up.  The father is actually on

22    the phone with the police department trying to find out what

23    happened and the father gets out and James said, *oh my God.  I*

24    *thought I was going to die.  Thank God you're here.  I'm fine,*

25    *thank God I'm glad you guys are here.  Let's go to the*

J185hurC                              conference

1   *hospital.*

2              That's the sum and substance of it but they haven't

3   been formally deposed.

4              THE COURT:  That, offhand, presents a problem to me.

5   We will hear the testimony question by question and hear the

6   answers but if there was any thought that the parents were

7   going to recount a narrative of the events of the day, that's a

8   different story.

9              Now, tell me what Ms. Green is going to be testifying

10  to.

11             (Counsel conferring)

12             MR. STECKLOW:  Sorry, your Honor, we were having a

13  little discussion here.

14             THE COURT:  That's fine.

15             MR. STECKLOW:  I would like him to recount to you --

16  the fact what you said that you don't think is going to happen,

17  I do think statements were made to the parents from James about

18  what happened and I do believe it comes under the excited

19  utterance exception and I believe that Judge Scheindlin gave a

20  very good analysis of this in U.S. v. Del Rey which I have here

21  without a cite -- 275 F.Supp.2d 412 starting on page --

22             THE COURT:  What volume of F.Supp.2d?

23             MR. STECKLOW:  275 F.Supp.2d 412, a 2003 case.

24             THE COURT:  Now, have you spoken with the parents?

25             MR. STECKLOW:  I have spoken to them but not recently.

1    Mr. London has been preparing the trial testimony.

2              THE COURT:  Well, for the moment my ruling stands and

3    if there is any indication that they now remember some

4    narrative that they want to get in, you are not to elicit that

5    testimony without first addressing it with me at the side bar.

6              MR. LONDON:  So then I will speak to Ms. Marquez and

7    to James Hurt, Sr. and get specifically exactly the narrative.

8              THE COURT:  No, no, no.  You talked to them -- this is

9    not a game.  You talked to them and you told me what you

10   believed they were going to testify to.  I accept that at face

11   value.  I am not urging you to go and say, so, what's the

12   narrative your son told you?

13             MR. STECKLOW:  Your Honor, I'm sorry.

14             When we were talking just now, he said once James was

15   in the car on the way to the hospital, that's when he told the

16   story, and I said my opinion is that is still excited utterance

17   and that's what we want to present to the Court.

18             THE COURT:  You can give me letter briefing on that

19   but you are not to elicit that until you get a ruling from me

20   otherwise.

21             MR. STECKLOW:  Yes, your Honor.

22             THE COURT:  My question was about Ms. Green so can we

23   get back to my question?

24             MR. STECKLOW:  Yes, your Honor.

25             THE COURT:  Are you going to call Ms. Green?

1            MR. LONDON:  At this point Ms. Green -- we are not

2    going to be calling Ms. Green, your Honor, but can I have a

3    clarification on the ruling?

4            THE COURT:  Yes.

5            MR. LONDON:  His mother is the first one who arrives

6    and he has a conversation with his mother, and then the father

7    pulls up and the father is on the phone with the police.  And

8    he gets in the car with the father and the father drives them

9    to the hospital in Westchester.  The conversation between James

10   and his father in the car, are you saying where James is

11   telling his father what happened because the mother wasn't in

12   the car with them, just the father was, are you saying that

13   testimony is not allowed?

14           THE COURT:  As of the moment.

15           MR. LONDON:  Okay.

16           THE COURT:  Correct, as of the moment.

17           Now, with regard to the patrol guide, I think

18   Ms. Wilson probably would give you my ruling.  You have

19   probably heard it from me.  If you haven't, your colleagues

20   certainly.

21           MR. STECKLOW:  I have heard it, Judge.

22           MS. WILSON:  I am sure that my colleagues have but I'm

23   not certain what your Honor's ruling will be.

24           THE COURT:  Okay.  So, the plaintiff can reference the

25   patrol guide.  The patrol guide does not set a floor or a

1    ceiling on officers' conduct.  It is not the standard under

2    Section 1983 or even under the state law claims.  It is a

3    guidance document and it does not provide a basis for liability

4    but that is not to say that a witness can't be questioned about

5    the patrol guide.  And I probably will be very active in

6    instructing the jury as to what the patrol guide does and does

7    not permit them to do.  They can hear the testimony but

8    complete compliance with the patrol guide does not insulate

9    someone from 1983 liability.  By the same token, disobeying or

10   not following the parole guide does not give rise to

11   Section 1983 or other tort liability.

12          MR. LONDON:  Can I have one more clarification ruling?

13          THE COURT:  Sure.

14          MR. LONDON:  So, the mother, Ms. Marquez, received a

15   phone call from Ms. Lopez who will not be testifying,

16   Ms. Ashley Lopez, James' -- the plaintiff's ex-girlfriend.  Can

17   I elicit from the mother that she received a phone call from

18   Ms. Lopez, who was very upset, because she was on the phone

19   face-timing with James when this happened and the police pulled

20   him over and what she told James' mother and also James to

21   testify that he was on the phone with her after the incident

22   for a few minutes before his phone died.

23          THE COURT:  I know that you are aware of this, that an

24   out-of-court statement offered for the truth of its content

25   falls within the hearsay ruling.  What exception to the hearsay

J185hurC                        conference

1   rule do you contend the statements made by Mr. Hurt to

2   Ms. Lopez or Ms. Lopez to the mother or Mr. Hurt to the mother,

3   falls within an exception of the hearsay rule?

4           MR. LONDON:  It is excited utterance to complete the

5   narrative and to explain why the mother took the steps she did

6   after speaking to Ms. Lopez.

7           THE COURT:  I'm not going to allow that testimony.

8   You can provide me with further briefing on the subject but you

9   are not to elicit the testimony without a further ruling from

10  the Court.

11          MR. LONDON:  Can the mother at least testify she

12  received the phone call?

13          THE COURT:  Absolutely.

14          MR. LONDON:  Okay.

15          THE COURT:  That's not an out-of-court statement

16  speaking for the truth of its content.  I'm not really going to

17  get into all the things that you will be allowed to do at trial

18  but there are many things, okay, and Mr. Stecklow will guide

19  you and I am sure he is going to participate in the trial and

20  it will all be fine.

21          You are going to have to explain the trip program

22  and -- well, further let me just cut to the chase.  Do the

23  plaintiffs intend to offer any evidence concerning a trip

24  program?

25          MR. LONDON:  No, your Honor.

1              THE COURT:  Okay, so that's done.

2              And what do the plaintiffs expect to elicit from

3      Lieutenant Paytner?

4              MR. STECKLOW:  Your Honor, if we are able to submit

5      part of the CCRB investigative report -- not the recommendation

6      but another document, we wouldn't have to call Lieutenant

7      Paytner.  If we were able to get a stip done we wouldn't call

8      him.

9              Basically, if the Court recalls, early on at one point

10     in this case in chambers you expressed that one of three things

11     happened here.  Either cop impersonators did this, either the

12     cop is lying or either your client is lying.  And one of them

13     was investigated by the CCRB and it was cop impersonator -- and

14     they have a special unit that investigates police

15     impersonation.  And they went to them and they said this

16     doesn't line up with anything we have seen, it is not

17     consistent with anything and they knocked that off.

18             That's all we want to present to the jury; that you

19     are hearing two people, you are going to believe one of them,

20     there is not a third option.

21             THE COURT:  Is this an investigative report of some

22     sort?

23             MR. STECKLOW:  Yes, your Honor.

24             THE COURT:  I haven't seen it so I have not anything

25     to say on it at this stage and I will reserve until I hear

J185hurC                        conference

1    more.

2              MR. STECKLOW:  In the JPTO, your Honor, but I

3    understand you haven't seen the document.

4              THE COURT:  I don't think the documents have been

5    supplied.

6              MR. STECKLOW:  I don't think it has been.

7              THE COURT:  Evidence of injury.  Defendants argue that

8    plaintiff should be precluded from offering evidence of

9    injuries to the forearm and finger because he cannot

10   demonstrate that they were the results of excessive force.  It

11   cannot be argued, says the defendants, that plaintiffs jumping

12   over a fence resulting in lacerating his forearm and injuring

13   his finger was a reasonably foreseeable consequence of the

14   officers' alleged chase of plaintiff.

15             The plaintiffs did not think much of this argument and

16   I don't quite follow the logic.  The plaintiff can testify to

17   his injuries and how they were caused and there will be,

18   presumably, a jury question whether they were reasonably

19   foreseeable consequences of the tortious conduct or whether

20   there otherwise is a nexus between the injury and the conduct.

21   Those are questions for the jury to sort out.

22             At this stage, the notice of claim does not come in to

23   evidence.  It may be that somebody may open a door, which would

24   enable the plaintiffs to use the notice of claim or for the

25   defendants to use the notice of claim but until that happens,

J185hurC                        conference

1    it does not come in and consistent with what I have said

2    previously, the Rule 56.1 statement does not come in.

3            Now, let me hear about the demonstrative video.

4            MR. LONDON:  Yes.  This is completely my mistake.  I

5    totally forgot to bring it.  I have a 4-month-old child at

6    home, it is sitting at my desk.  I can drop it off at the court

7    tomorrow.  I think your Honor should watch it before you make

8    any ruling.  Basically it is someone who spoke to the witness,

9    who read the deposition transcripts, and who made a video.  And

10   all of the arguments I am not going to repeat that we put in

11   our brief for why we think it will be -- I will let

12   Mr. Stecklow make --

13           THE COURT:  What do you plan to do with the video?

14           MR. STECKLOW:  We plan to show it to the jury, I

15   believe, after -- after Mr. Hurt's testimony or in the closing.

16   As the Court knows and the case we cited in our papers is

17   *Morency v. Annucci,* tests for admissibility for computer-edited

18   demonstrative evidence remains the same as that as judicial

19   exhibits, it is probative versus prejudicial.  Here we are

20   arguing to the Court that this could not be prejudicial because

21   the plaintiff will be here to testify to whatever is in the

22   video and so it is not to appeal to the jury's emotions.  In

23   some ways we believe this might even be considered best

24   evidence because there is no surveillance video so it has had

25   to be recreated.  It is probative because it gives a concise

1    visual representation to the jury in real-time that would

2    otherwise be impossible.  We can set a foundation but having

3    the individual come in who created it and explain how it was

4    created as far as where he got the information and how he can

5    testify that it's accurate and Mr. Hurt can testify that it's

6    accurate.

7              Your Honor, I will be honest.  This is the first time

8    I have tried to used demonstrative evidence like a video and I

9    found the law, I understand the standard and the testing and we

10   are submitting it.  I do believe, as Mr. London said we need to

11   give it to the Court to look at in order for the Court to make

12   a ruling, but that's our argument.

13             THE COURT:  Let me hear from the defendants.

14             MS. WILSON:  Your Honor, the defendants' main

15   objection to this demonstrative exhibit is the fact that it

16   purportedly recreates these events but they're just based on

17   plaintiff's version of events and certain aspects of

18   plaintiff's version of events are emphasized, whereas certain

19   aspects are deemphasized.  For example, where plaintiff gets

20   his finger caught in the fence is emphasized.  Additionally,

21   there is no demonstration that it is a fair and accurate

22   representation of the events or of the area as of the time of

23   the incident.  Plaintiff has never fully described where,

24   exactly, the fence was located or what that fence looked like.

25   Additionally, there are certain questions of the amount of time

1   that it takes.  For example, there is some number of seconds

2   are elapsed in the time period where the livery car is being

3   followed by the police car and then a very short amount of time

4   elapses in the depiction of the events as plaintiff purports

5   them to have occurred.

6           So, we would argue that it is more prejudicial than

7   probative.

8           THE COURT:  I will look at the video and I may have to

9   have a hearing on it.  So, there you are.  But I am reserving

10  decision.

11          So, we don't have a trial date set in this case.

12          MR. LONDON:  Your Honor.

13          MR. STECKLOW:  We think we do.

14          THE COURT:  We do.  All right.

15          MR. STECKLOW:  We think we have February 4th as a

16  trial date in this case.

17          THE COURT:  Wonderful.  That's terrific.  Good.

18          MR. LONDON:  Does the Court think there is any reason

19  that it might be delayed because of other things going on or we

20  should plan accordingly?  Because I did have a trial that was

21  supposed to start yesterday that was cancelled.

22          THE COURT:  Well, I'm not very good on weather

23  prognostication but I do know that at some points this time of

24  year we do get weather issues.

25          MR. LONDON:  I meant with the government shutdown.

J185hurC                         conference

1          THE COURT:  Well, I will tell you right now, we are

2    not doing civil jury trials if the government shutdown

3    continues.

4          MR. STECKLOW:  Is January 11th the cutoff date that I

5    have read, your Honor?

6          THE COURT:  Well, it's not really a cutoff date but

7    January, now it looks like it is January 18th, is when the

8    federal judiciary will run out of money for paying salaries.

9    That's what I understand.  And with regard to civil jury

10   trials, I believe the last indication I had is there will not

11   be civil jury trials during the period of the shutdown and, in

12   fact, I don't believe our jurors are paid after the 18th.

13         But the information, I want to quickly add, the

14   information is fluid.  I get e-mails nearly every day and I can

15   do this for you.  I can have a drop dead date here of, if the

16   parties want of, let's say, have you come in on January 30th

17   and if we don't have clarity by that date I will pull the plug.

18         MR. STECKLOW:  Okay.

19         THE COURT:  If we have clarity by that date, you will

20   know.

21         MR. STECKLOW:  If we have clarity by that date then we

22   don't need to come in on the 30th, or do you want to have

23   another conference before the trial, your Honor?

24         THE COURT:  Why don't we do this.  We are going to set

25   it for a conference for 2:15 on January 30th.  If there is

J185hurC                          conference

 1   clarity, I will vacate the conference and you will know.  If

 2   there is a lack of clarity, it is probably worth your while to

 3   come in.

 4        One of the options I should mention, is that I have a

 5   criminal case on February 25th and I don't know whether it's

 6   going, I can't be sure that it's going to go because I can't

 7   ever be sure and I could set you as first backup to that case.

 8   That's a possibility.  Because then it gets a little bit more

 9   difficult for a while.

10        MR. STECKLOW:  Judge, we are both good, both sides are

11   good if you want to put us as backup for the 25th as of now.

12        THE COURT:  That's what I will do.  I am going to put

13   this down in the event that we can't go forward on the 4th, you

14   will be first backup to 18 crim 259.

15        MR. STECKLOW:  18-259.  Thank you, your Honor.

16        THE COURT:  Yes.  And we will see what happens.

17        MS. WILSON:  Your Honor, I just wanted to raise a

18   couple of questions on the defendant's motions *in limine*.

19        THE COURT:  Yes.  Sure.

20        MS. WILSON:  As to point 11, I know that there was a

21   ruling regarding the CCRB reports and findings --

22        THE COURT:  Right.

23        MS. WILSON:  -- when we were discussing plaintiff's

24   motions *in limine* but I don't believe that there was a ruling

25   regarding the, any IAB findings.

J185hurC                        conference

1              THE COURT:  What IAB findings were there and where are

2       they reflected?

3              MS. WILSON:  I think the IAB findings were confined

4       largely to incidents to -- hold on one second, your Honor?

5              THE COURT:  These are the exhibits that have never

6       been furnished to me, 214?  224?  I have never seen them so I

7       don't really have any opinion on the subject.  If somebody

8       wants to furnish them to me at some point before trial, I could

9       probably --

10             MR. LONDON:  I can bring them in tomorrow, too, when I

11      drop off the video.

12             MS. WILSON:  That would be fine with defendants, your

13      Honor.  Thank you.

14             THE COURT:  Your argument is they should be excluded?

15             MS. WILSON:  Yes.  That is correct, your Honor.

16             THE COURT:  Why?

17             MS. WILSON:  I'm sorry.  I have a lot of paper in

18      front of me.

19             I think that this is returning to the topic of the

20      police impersonation and I think that we would want these

21      documents to be excluded because as of this point, defendants

22      aren't making any argument that there -- aren't proposing a

23      defense that there was police impersonation and we think that

24      the introduction of that evidence would simply be confusing to

25      the jury and we don't think that it's necessary and probative.

J185hurC                           conference

1          THE COURT:  Well, something you said raises a question

2     in my mind on the police impersonation point.  Your theory of

3     the case is what then?

4          MS. SMITH-WILLIAMS:  Your Honor, our theory of the

5     case is neither Sergeant Connizzo, nor any other NYPD officer,

6     engaged in the alleged acts that plaintiff is alleging

7     essentially.

8          THE COURT:  So, are you going to argue to the jury

9     that the plaintiff made up the story or are you going to say we

10    don't know whether he made it up but it didn't involve our

11    people.

12         MS. SMITH-WILLIAMS:  Probably the latter, your Honor.

13         THE COURT:  If it is the latter, isn't that the

14    impersonation defense?

15         MS. SMITH-WILLIAMS:  I don't know that we intend to

16    essentially affirmatively state that there was some

17    impersonators but I guess, your Honor, that the inference can

18    be made.  Yes.

19         THE COURT:  So that's why that particular argument

20    doesn't have a lot of appeal, to me at least, because the

21    plaintiff is trying to negate an inference that you would like

22    the jury to draw and they want to come forward with evidence

23    to, in essence, have something to argue to the jury with; to

24    say no, that inference is not a reasonable inference, this was

25    investigated and there is no evidence of this, following the

J185hurC                          conference

1    modus operandi of impersonators.

2          Now, I haven't looked at these documents, I don't

3    otherwise have an opinion, but the argument that, well, we are

4    not going to argue police impersonation therefore police

5    impersonation documents don't come in, doesn't really seem to

6    carry much weight, as far as I'm concerned.

7          MR. STECKLOW:  Your Honor, I found --

8          MS. SMITH-WILLIAMS:  I understood, your Honor.  If I

9    could just finish my point?

10          THE COURT:  Yes.

11          MS. SMITH-WILLIAMS:  So, I do think, though, that if

12   the issue of police impersonation is going to come out whether

13   or not through any inference that could be made on the

14   evidence, I think it is confusing for the documents to actually

15   be given to the jury.  They are getting a document saying that

16   there was no investigation that they were aware of at the time.

17   I think in that instance that maybe it makes more sense to have

18   Lieutenant Paytner testify as plaintiff initially requested as

19   part of their witness list so we would withdraw any objection

20   to that.

21          THE COURT:  Well, I think what you really ought to do

22   here is get me a letter brief on this.  I'm going to get a

23   letter brief on the video from the plaintiffs, right?  Is there

24   anything you want to add or are you happy, you have said

25   everything you want to say?

J185hurC                         conference

1          MR. STECKLOW:  I think I have said everything on the

2     video.  We will just give you the video, Judge.

3          THE COURT:  So, I will take a letter brief from the

4     defendants on this issue of why these documents shouldn't come

5     in.

6          MR. STECKLOW:  Alternatively, your Honor, we would

7     love to enter into a stip that the police, that there is a

8     specific -- whatever the language is but that it is not police

9     impersonation and the police investigated, it is not police

10    impersonation.  Whatever language we could work out.

11         THE COURT:  You are getting a head shake from the back

12    table.

13         MR. STECKLOW:  Okay.

14         THE COURT:  I think the fair answer here is that it's

15    not the case that they're refraining from arguing

16    impersonation.  You quoted me, and I don't remember this

17    specifically, but it sounds like the defendant is telling the

18    truth and the defendants are lying, or the plaintiff is lying

19    and the defendants are telling the truth, or the plaintiff is

20    telling the truth but it was somebody who looked like police

21    officers who weren't police officers.  And the argument to the

22    jury that Mr. Hurt may be lying or he may be telling the truth

23    but if he is telling the truth, *it wasn't our employees,* that

24    implicitly, if he is telling the truth then it is somebody with

25    a badge around his neck identifying himself as a police officer

J185hurC                          conference

1    who is not, that is an impersonator.

2            I think upon further probing, quite candidly, counsel

3    for the defendants has indicated that that's what they're going

4    to urge to the jury or one of the things they're going to urge

5    to the jury.  So, that's why, offhand, it doesn't sound

6    irrelevant but that doesn't make any old document walk into

7    evidence on its own two feet.

8            MR. STECKLOW:  I can pass up to Court the document.

9            THE COURT:  No.  I would like to get some further

10   briefing on it and I will get a copy of the document.  The

11   defendants should attach it to their letter, the documents

12   they're referring to, and if you want to get a response in I

13   would ask you do it in three business days after you get the

14   defendant's letter.

15           MR. STECKLOW:  Is there a time for the defendant's

16   letter?

17           THE COURT:  Yes.

18           Can you get it in in three business days?

19           MS. WILSON:  From today, your Honor?

20           THE COURT:  Yes.  Look.  I'm within my rights to say

21   skip the letter, just argue it.  I am being nice here and

22   giving you more time.

23           MS. WILSON:  Yes, we will be able to get it in within

24   three days.

25           THE COURT:  I will tell you, when it comes to trial,

J185hurC                        conference

1    things happen a little bit faster.  This is a three-day trial

2    or so.

3              MR. STECKLOW:  Yes, your Honor.

4              THE COURT:  Okay.

5              MS. WILSON:  And I would also point out to the Court

6    that I believe that the Court has not made any rulings on point

7    3 and point 4 of defendant's request.

8              THE COURT:  What are you asking me to do?

9              MS. WILSON:  Point 3, defendant's request.

10             THE COURT:  Oh.  Okay.  I'm sorry.  Yes, I see it now.

11             As I understand it the plaintiff's position a beating

12   from the police is intentional, only intentional, and nothing

13   but intentional.  However, being struck by a vehicle, police

14   vehicle, could be intentional or it could be negligent.

15             Have I correctly stated the plaintiff's position?

16             MR. STECKLOW:  Yes, your Honor.

17             THE COURT:  So, I do not understand the plaintiffs to

18   say that they are going to argue that the beating was either

19   intentional or negligent.  They're not going to do that, but as

20   to the situation with regard to the car, again, this is not an

21   *in limine* issue.  This is maybe you will be knocked out at the

22   end of the case or maybe you'll tender a jury instruction or

23   maybe there will be a stipulation with the plaintiffs on it but

24   it is conceivable that the evidence could be consistent with

25   the other.

J185hurC                              conference

1           MS. WILSON:  Thank you, your Honor.

2           In part, I would just note that in plaintiff's

3    proposed jury instructions they do include the fact that the

4    defendant Connizzo acted negligently by using physical force.

5           THE COURT:  You just heard this:  That was a

6    withdrawal of it.  This is not the charging conference here.

7           MS. WILSON:  I understand, your Honor.

8           THE COURT:  So, they argued that and then, when

9    pressed by the Court, they acknowledged that in fact I think it

10   comes out of their papers, that they're only arguing it with

11   regard to the car.  All right.

12          Now, with regard to evidence of other unidentified

13   officers, I don't really understand the basis for the City's

14   argument.  You can't have 1983 liability against unidentified

15   officers.  I got that.  But, there are -- supplemental

16   jurisdiction of this Court is invoked and the argument is that

17   if I am wrong that it was not Connizzo but it was another NYPD

18   officer, then the City should be liable on the theory of

19   respondeat superior.

20          Is that the plaintiff's argument?

21          MR. STECKLOW:  Yes, your Honor.

22          MS. WILSON:  Well, it is the City's argument that that

23   is not what was pled in plaintiff's amended complaint or that

24   plaintiff testified to at his deposition and at his deposition

25   plaintiff consistently identified the involved officers as

J185hurC                           conference

1   Officer Connizzo and an unidentified John Doe officer.  So, we

2   would argue that then them saying that in the alternative that

3   these other unidentified officers that have, that are somewhere

4   out there, were actually the ones who were involved, should be

5   precluded because plaintiff consistently identified Connizzo as

6   having been the officer who was involved and plaintiff's

7   amended complaint only identifies Officer Connizzo and John Doe

8   no. 1.

9           THE COURT:  Well, certainly I think you may have a

10  fair point about there only being two officers involved and if

11  at trial the plaintiff tried to shift the theory to this being

12  seven people or at a different time or place, then you are not

13  on fair notice and I wouldn't allow that.  But, your position

14  is that, as I understand it, that plaintiff's counsel provided

15  a photograph of one or more officers to Mr. Hurt and Mr. Hurt

16  identified Mr. Connizzo from the photograph and you maintain

17  that he is wrong.  Right?

18          MS. WILSON:  Yes.  That's correct, your Honor.

19          THE COURT:  Well, if he is wrong then it's

20  Mr. Connizzo but the jury believes it is some other member of

21  the NYPD.  That has consequences in this case.  It's very

22  relevant to how this case shakes out.  It means the plaintiff

23  loses on the Section 1983 claim but it may mean that the

24  plaintiff prevails on the state law claims.  In fact, I had one

25  such case against the City and that's exactly what happened and

J185hurC                         conference

1    I am going to tell you, you can call up the City's attorney,

2    you can call up the plaintiff's counsel and I think they'll

3    both say that they didn't think that's what the verdict was

4    going to be but it was.  And, I am going to see whether I can

5    find it.

6           Yeah, I'm pretty sure this is it, Johnson v. City of

7    New York.  I didn't think there would be so many Johnsons that

8    I possibly couldn't get it but it's -- let's see if I can find

9    the trial.  That will tell me -- yes, I think it's 05 civil

10   7519.  Yes, 05 civil 7519 and, lo and behold, that's what the

11   verdict sheet represented and that was the outcome of the case.

12          What else?

13          MR. LONDON:  Nothing from plaintiff, your Honor.

14          MS. WILSON:  Nothing further from defendants, your

15   Honor.

16          THE COURT:  All right.

17          MR. STECKLOW:  I'm sorry.  One thing, your Honor.

18   Thank you.

19          THE COURT:  Yes.  One thing?

20          MR. STECKLOW:  Yes, one thing, a scheduling issue.

21          I am starting to teach at Fordham Law Wednesday

22   mornings 9:00 to 12:00 once a weak and, if possible, I would

23   ask the Court to allow me to do that and allow the trial to

24   start at 1:00 on Wednesday the 6th if we go forward that week.

25          THE COURT:  I want to be able to accommodate you but

J185hurC                        conference

1   Fridays are my conference day so you are not going to be

2   sitting on Friday.  But, this is such a short trial, I am going

3   to accommodate you.

4            MR. STECKLOW:  So, thank you so much, your Honor.

5            THE COURT:  Friday the 6th?

6            MR. STECKLOW:  Wednesday the 6th.

7            THE COURT:  Wednesday the 6th, rather.  You got it.

8            MR. STECKLOW:  Thank you, your Honor.

9            THE COURT:  And you start at 1:00?

10           MR. STECKLOW:  I finish by 12:00 at Fordham so I can

11   be here by 1:00.

12           THE COURT:  Good.  Excellent.

13           MR. STECKLOW:  Thank you so much, your Honor.

14           THE COURT:  What are you teaching?

15           MR. STECKLOW:  Fundamentals of Lawyering.  It is a new

16   bar requirement for New York State bar.

17           THE COURT:  Good.  Very good.  Thank you all very

18   much.  See you January 30th, maybe.  That's where we are at the

19   moment.

20           MR. STECKLOW:  Thank you, your Honor.

21           MS. WILSON:  Thank you, your Honor.

22           THE COURT:  Thank you, Pam.  Happy New year.

23                            o0o

24

25